UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,

v.

GREGORY F. TZANNOS,
  a/k/a GREGORY F. TZANNAS

Criminal No. 04-10193-JLT

### MOTION FOR *FRANKS* HEARING

Defendant Gregory Tzannos respectfully requests that this Court conduct a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), so that he may effectively challenge the accuracy and truthfulness of the affidavit submitted in support of a search warrant to search his home.

### I.   INTRODUCTION

As this Court undoubtedly realizes, our entire criminal justice system places great trust in a police officer who asks a court to issue a search warrant. Indeed, that trust is so immense that our courts <u>automatically</u> presume that such an officer is being entirely truthful. And defendants who allege otherwise have a rather high hurdle to jump: just to obtain an evidentiary hearing, they must first make a substantial preliminary showing that an officer intentionally, or at least recklessly, made misrepresentations that were material to probable cause.

Here, Mr. Tzannos proves that he has jumped that hurdle by providing this Court with convincing evidence which shows that the affiant in this case knowingly made false allegations to gain authorization to search Mr. Tzannos's home. More specifically, and

as discussed in more detail below, there are four very substantial reasons to believe that the affiant fabricated the very existence of the confidential informant he relied upon to secure the warrant:

- First, the affiant swore under oath that the informant called a particular phone number on August 16, 2003 and placed a bet with Mr. Tzannos. The defense, however, has identified -- and has documentation to back it up -- each and every person who called that particular telephone number and placed a bet on that day. And each and every one of those people has signed an affidavit, denying under oath that s/he is the informant.

- Second, the affiant swore under oath that the informant called a particular phone number on August 17, 2003 and placed a bet with Mr. Tzannos. The defense, however, has identified – and has documentation to back it up -- each and every person who called that particular telephone number and placed a bet on that day. And each and every one of those people has signed an affidavit, denying under oath that s/he is the informant.

- Third, the affiant swore under oath that the informant called a particular phone number on August 20, 2003 and placed a bet with Mr. Tzannos. The defense, however, has identified – and has documentation to back it up -- each and every person who called that particular telephone number and placed a bet on that day. And each and every one of those people has signed an affidavit, denying under oath that s/he is the informant.

- Fourth, the affiant swore under oath that the informant placed a controlled call to a particular phone number on August 25, 2003 and spoke to Mr. Tzannos. The defense, however, has identified – and has documentation to back it up -- each and every person who called that particular telephone number that day. And each and every one of those people has signed an affidavit, denying under oath that s/he is the informant.

2

The only logical conclusion that one could possibly reach is that there was no informant, or at least that no informant did the things described in the affidavit. Obviously, such falsehoods can only be made with deliberation and forethought. Because such perjurious conduct is so foul to notions of justice and fair play, courts -- including this one -- "must zealously guard themselves against being used by police officers who lie and who violate constitutional rights in order to achieve what they improperly perceive as the greater end of convicting other wrong doers." *Commonwealth v. Lewin*, 405 Mass. 566 at n. 12 (1989). Ultimately, this Court will no doubt conclude that the only way it can remedy the affiant's conduct in this case is by ordering the fruits of the tainted warrant suppressed.

## II.   RELEVANT FACTS

On June 30, 2004, a federal grand jury indicted Mr. Tzannos, charging him with violating 18 U.S.C. § 922 (g)(1) (felon in possession of firearm). That charge stems directly from the execution of the search warrant at issue here.

### The Search Warrant Application

On August 28, 2003, Massachusetts State Trooper Pasquale Russolillo submitted an application for a search warrant to a magistrate of the East Boston District Court. In support of the warrant application, Russolillo offered a fourteen page affidavit, alleging he had probable cause to believe that Mr. Tzannos was committing violations of M.G.L. c. 271, §§ 17 and 17A (proscribing the possession of "apparatus, books or any device for registering bets" and the use of a telephone to accept bets). Russolillo sought – and obtained – permission to search Mr. Tzannos's home for, among other things, documents relating to gaming offenses. *See* Exh. 1.

### Russolillo's Alleged CI

In setting forth the factual allegations in support of probable cause, Russolillo relied almost exclusively upon information he attributed to a single confidential informant, identified as "CI-1."

Russolillo alleged that CI-1 told him, as well as Massachusetts State Trooper Orlando Nunzio, "that he/she was placing illegal wagers on sporting events over telephone being [sic] numbered (617) 567-6114 with Gregory Tzannos." Exh. 1, p. 8, ¶ D. Russolillo claims that CI-1 made three very specific, and incriminating, statements to him and/or Trooper Orlando about Mr. Tzannos:

- First, that CI-1 had placed a wager with Tzannos on August 16, 2003 over telephone number (617) 567-6114;

- Second, that CI-1 had placed a wager with Mr. Tzannos on August 17, 2003 over telephone number (617) 567-6114; and

- Third, that CI-1 had placed a wager with Mr. Tzannos on August 20, 2003 over telephone number (617) 567-6114.

*See id.* at ¶¶ J, M.

Russolillo also claims that CI-1 placed a controlled call to Mr. Tzannos. Specifically, he alleged:

> On [August 25, 2003] during gaming hours, "CI-1" placed a controlled telephone call to telephone numbered (617) 567-6114. (It should be noted that a controlled gaming call is essentially an investigative method of verifying the accuracy of an informants [sic] information. Generally these calls are conducted during the specified gaming periods, and closely monitored by a member of law enforcement. During this occurrence, the investigator personally dials the specified telephone number, and remains on the line until the call is answered by the registering agent, subsequent to which the telephone is

4

> given to the cooperating individual and the ensuing conversation is monitored by the officer present.) "CI-1" stated that the person on the other end of the telephone answered and proceeded to give a run down of all the scheduled baseball lines. "CI-1" also informed this affiant that the person that answered the telephone was Gregory Tzannos.

*Id.* at p. 12, ¶ N.

No doubt aware of the constitutional requirements for obtaining a warrant based upon information attributed to an unnamed informant, Russolillo went to great lengths to convince the magistrate that his CI-1 was a reliable source. To that end, he made very detailed and very specific allegations, including the following:

- This affiant and Trooper Orlando have known "CI-1" for more than two years, and "CI-1's" true identity and residential address are known to us.

- "CI-1" has admitted to myself and Trooper Orlando that he/she has been involved with illegal gaming for more than ten years. During this period of time, "CI-1" has placed illegal gaming wagers on professional and college sporting events with a number of Boston area bookmakers.

- In one case, "CI-1" was able to particularly describe the activities and locations utilized by a bookmaker. For example, in one particular instance "CI-1" provided a telephone number related to an illegal bookmaking office. "CI-1" was also able to identify the bookmakers who utilized this telephone number. Officers of the Special Service Section were able to corroborate this information during several surveillances. On numerous occasions the bookmakers arrived and departed from the location associated with the aforementioned telephone number during prime gaming hours. As a result of the information provided by "CI-1," a search warrant was executed [at] 161 Salem Street, Suite 7, Medford, Massachusetts, in Middlesex County on October 28, 2002, wherein the bookmakers were present. A large number of illegal betting records were seized which was consistent with the

>information provided by "CI-1." Upon execution of said search warrant, this affiant and other law enforcement personnel present, arrested Anthony Bonfilio, Gregory Chenevert, and James Bonfilio for gaming violations. On June 27, 2003, all three subjects were convicted of Gaming Violations and fined $1500.00.
>
>- This confidential reliable informant is not receiving any compensation or remuneration of any sort for the information provided to this officer.

*Id.* at pp. 8-9, ¶ D.

### Execution of the Warrant

Officers executed the warrant at 7:30 p.m. on August 28, 2003, just three days after CI-1 allegedly placed the controlled call to Mr. Tzannos over (617) 567-6114.

During the search, officers found, *inter alia*, documents related to gaming. Included among the seized items were weekly ledger sheets. These ledger sheets identify, for each day of a given week, the month, day of the month, who made bets, as well as the sums owed to/by each bettor. *See* Affidavit of Counsel In Support of Motion for a *Franks* Hearing ("Aff.") at ¶¶ 6, 12, 15 and 17. By analyzing these ledger sheets, the defense was able to determine exactly who called and placed bets on the days highlighted by Russolillo, *i.e.*, August 16, 17, 20, and 25, 2003. *See id.*

### II. ARGUMENT

Although an affidavit offered in support of an arrest warrant application ordinarily carries a presumption of validity, in some cases that presumption may be overcome. *See United States v. Grant*, 218 F.3d 72, 77 (1st Cir.) *cert. denied*, 531 U.S. 1025 (2000). To do so here, Mr. Tzannos must satisfy two factors: First, he must make a "substantial preliminary showing" that Russolillo knowingly and intentionally made false

statements in his affidavit. *See id.* Second, Mr. Tzannos must show that the misrepresentations were material to the magistrate's finding of probable cause. *See id.*

### A.     Russolillo Made Several Intentional Misrepresentations In His Affidavit.

When Russolillo's affidavit is compared against the evidence seized during the search, and evidence uncovered during the defense investigation, it becomes readily apparent that Russolillo's allegations regarding CI-1 are simply not true. And, as discussed in more detail below, Mr. Tzannos makes a substantial preliminary showing that those falsehoods were intentional and deliberate.[1]

#### 1.    Mr. Tzannos Makes A Substantial Showing that Russolillo Falsely Alleged Under Oath That "CI-1" Called And Placed Wagers With Mr. Tzannos Over Telephone Number (617) 567-6114.

The evidence seized, coupled with evidence obtained by the defense during its investigation, shows that a confidential informant did <u>not</u> place wagers with Mr. Tzannos over telephone number (617) 567-6114 on August 16, 17, or 20, 2003.

As explained in the Affidavit of Counsel, eight people -- and only eight people -- called and placed bets on August 16, 2003. Those eight people were: Chris, Bev, Fisher, Jerry, Keith, Norton, Ted, and Tuna. *See* Aff. at ¶¶ 6-8. Of the eight, only four called telephone number (617) 567-6114 (the telephone number explicitly mentioned in Russolillo's affidavit): Chris, Keith, Jerry and Norton. *See id.* at ¶ 10. <u>All four deny, under oath, being the CI</u>. *See id.* And, to be as thorough as possible, the defense also

---

[1] Given the number of false allegations, any suggestion that they were the result of a mistake or a scrivener's error is preposterous.

obtained affidavits from the other four people who called and placed bets on August 16, 2003. <u>And each denied, under oath, that s/he was the informant</u>. *See id.* at ¶ 11.

Further, records seized during the search also show that five -- and only five -- people called and placed bets on August 17, 2003. Those five were: Bev, Fisher, Keith, Norton, and Tuna. *See id.* at ¶ 12. Only Keith and Norton called the telephone number referenced in Russolillo's affidavit, <u>they deny, under oath, being Russolillo's informant</u>. *See id.* The other three people who called and placed bets on August 17, 2003 also <u>deny, under oath, being Russolillo's informant</u>. *See id.* at ¶ 16.

Finally, the records seized during the search show that only three people called and placed bets on August 20, 2003: Bev, Fisher, and Tuna. *See id.* at ¶ 15. <u>Not one of them even called the relevant telephone number</u>. *See id.* at ¶ 16. And, in any event, <u>each denies being the CI</u>. *See id.*

### 2. Mr. Tzannos Makes a Substantial Showing That There Was No Controlled Call on August 25, 2003.

Russolillo also alleged that CI-1 also placed a "controlled call" on August 25, 2003. The evidence seized during the search, however, shows that <u>this call never took place</u>.

As the warrant return indicates, officers seized a large number of audiocassette tapes during the search. Although the vast majority of the tapes were blank, four contained recordings from the day of the alleged controlled call. But of those four, only one is a recording of calls made to telephone number (617) 567-6114, the telephone number explicitly referenced in Russolillo's affidavit. *See* Aff. at ¶ 21. And a transcript of that tape shows that only three people made gaming related calls to (617) 567-6114

8

that day: Paulie, Jerry and Norton.  <u>Each denies, under oath, being the informant.</u>  *See id.*[2]

### 3. Mr. Tzannos Has Met His Burden of Making a Substantial Preliminary Showing that Russolillo Made Deliberate or Reckless Misrepresentations in his Affidavit.

To meet his burden on the first prong -- making a substantial showing that Russolillo deliberately and/or recklessly made the misrepresentations highlighted above -- Mr. Tzannos need not meet the preponderance standard. *See, e.g., United States v. Mares-Martinez*, 240 F.Supp.2d 803, 821 (N.D. Ill.)  Moreover, unless the prosecution expressly rebuts Mr. Tzannos's proof, this Court may assume that the facts are as he represents them in this Motion and its supporting documents. *See, e.g., United States v. Tufaro*, 593 F.Supp. 476, 485 (S.D.N.Y. 1983) *aff'd*, 762 F.2d 991 (2d Cir. 1985).[3]

As the Massachusetts Supreme Court has recognized, "[l]ies about the existence of an undisclosed informant and his reliability are easy to tell yet most difficult to uncover." *Lewin*, 405 Mass. at 585.  Nevertheless, Mr. Tzannos has uncovered them here, and has more than met the burdens imposed by *Franks*.

---

[2] Furthermore, as described in the Affidavit of Counsel, each person who called different telephone numbers on August 25, 2003 also denies being Russolillo's informant. *See* Aff. at ¶ 22+.

[3] In *Tufaro*, like here, the basis for the defendant's *Franks* Motion was whether the affiant had made misrepresentations about an unnamed informant. Tufaro alleged that he knew the true identity of the informant, and that the affiant had failed to allege specified circumstances that were relevant to the informant's credibility. The *Tufaro* Court accepted the defendant's allegations regarding the true identity of the informant because "the Government has not directly controverted [the defendant's] hypothesis." *Id.* There is no reason to treat this case any differently, especially since only Russolillo (and perhaps the prosecution) knows the truth.

9

To be sure, Mr. Tzannos has provided this Court with a detailed analysis of documents seized during the search, which reveals each person who could potentially be Russolillo's "CI-1." Even more importantly, Mr. Tzannos has provided this Court with sworn statements from each person, denying that s/he was the informant. The only reasonable inference one can draw is that Russolillo intentionally and falsely told the East Boston District Court that he had an informant who placed illegal wagers with Mr. Tzannos who placed a controlled telephone call to Mr. Tzannos. In other words, Russolillo lied about CI-1's very existence.

**B.    The Misrepresentations Were Clearly Material To Probable Cause.**

As to the second prong – whether Russolillo's misrepresentations were material -- this Court must determine whether the warrant application, once rid of the false information, still demonstrates probable cause. *See United States v. Stewart*, 337 F.3d 103, 105 (1st Cir. 2003); *United States v. Hadfield*, 918 F.2d 987, 992 (1st Cir. 1990), *cert. denied*, 500 U.S. 936 (1991). If not, then Russolillo's misrepresentations were material, and Mr. Tzannos has surpassed the second hurdle to an evidentiary hearing. *See id.*

Here, once the false statements concerning "CI-1" are excised, the affidavit is virtually devoid of substance. For example, in the first four pages, Russolillo does nothing but recount generalized allegations about how gaming organizations operate and his past training and experiences. On the next four pages, he sets forth allegations that are entirely immaterial to the type of search warrant he was seeking. Instead of alleging facts material to probable cause, Russolillo complains at length that "normal investigative techniques" are not fruitful in investigations of gaming organizations. Although

10

allegations of this ilk are common-place in wiretap applications,[4] they added nothing to the probable cause determination the magistrate was called upon to make in deciding whether to issue the warrant for Mr. Tzannos's home.

The remaining pages fall far short of probable cause. Indeed, once the allegations concerning the CI are put aside, the only allegations specific to Mr. Tzannos are:

- That telephone number (617) 567-6114 was registered to Mr. Tzannos at 73 Lubec Street, Floor 1 in East Boston;

- That telephone number (617) 567-6114 was "call forwarded" to telephone number (617) 846-6630 on August 16 and 17, 2003.

- That telephone number (617) 846-6630 was registered to "DBA: American Eagle Purchasing Agents" located at 381 Winthrop Street, Floor 2, Winthrop, Massachusetts (the premises described in the warrant).

- That Mr. Tzannos was the Treasurer and registered agent of American Eagle Purchasing Agents;

- That Mr. Tzannos listed his mailing and residential address as 10 Siasconset Drive in Bourne, Massachusetts with the Registry of Motor Vehicles;

- That "it is common for bookmakers to…rent and/or use apartments, houses, or buildings that are not their homes to conduct their illegal gaming business;" and

- That surveillance showed that two cars registered to "Linda Wagner" were present at the 381 Winthrop Street address on August 18, 19, 20, 25 and 26, 2003.

*See* Exh. 1.

These allegations establish neither probable cause to believe Mr. Tzannos

---

[4] To obtain a wiretap warrant, an affiant must satisfy an issuing court that "normal investigative techniques have been tried and failed or reasonably appear unlikely to succeed if tried." *See* M.G.L. c. 272, § 99E3.

11

committed a crime, nor probable cause to believe the evidence of such would be found in his home. *See, e.g., United States v. Feliz*, 182 F.3d 82, 86 (1st Cir. 1999) *cert. den.*, 528 U.S. 1119 (2000) ("A warrant application must demonstrate probable cause to believe that (1) a crime has been committed – the 'commission' element, and (2) enumerated evidence of the offense will be found at the place to be searched – the so-called 'nexus' element.") Accordingly, Mr. Tzannos has met *Franks'* second prong.

## IV. CONCLUSION

For the foregoing reasons, Gregory Tzannos respectfully requests that this Court grant his Motion for a *Franks* Hearing and conduct an evidentiary hearing. As an alternative to conducting a hearing, Mr. Tzannos respectfully requests that this Court order the prosecution to reveal the identity of the alleged CI, or conduct an *in camera* hearing to determine whether in fact the CI actually exists.

Respectfully Submitted,
The Defendant,
GREGORY TZANNOS
By his attorneys,

Patricia A. DeJuneas /RE/
Patricia A. DeJuneas (BBO No. 652997)
Richard M. Egbert (BBO No. 151800)
The Law Offices of Richard Egbert
99 Summer Street, Suite 1800
Boston, MA 02110
Tel: (617) 737.8222

12

## CERTIFICATE OF SERVICE

I, Patricia A. DeJuneas, hereby certify that I caused this document to be served by hand delivery upon on Assistant United States Attorneys Frederick Wyshak and Michael Tabek, this 15th day of February 2005.

> Patricia A. DeJuneas /JSH
> Patricia A. DeJuneas