UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>GREGORY F. TZANNOS,<br>a/k/a GREGORY F. TZANNAS | Criminal No. 04-10193-JLT |

## CORRECTED REPLY BRIEF IN FURTHER
## SUPPORT OF MOTION FOR A *FRANKS* HEARING

In his Motion for a *Franks* Hearing, Mr. Tzannos alleged that, in order to obtain a search warrant, Massachusetts State Police Trooper Pasquale Russolillo intentionally and falsely told the East Boston District Court that he had an informant who gave incriminating information about Mr. Tzannos. The defense did not make its allegations lightly, and it certainly did not make them without cause. To be sure, it conducted a thorough investigation and a thorough analysis of the documents that the police had seized. Appended to that Motion was an Affidavit of Counsel, which referred to and explained seventeen (17) exhibits.

Not surprisingly, the prosecution has opposed the Motion. But, instead of responding to Mr. Tzannos's allegations head-on, the prosecution tries to obfuscate the real issue: *whether Trooper Russolillo intentionally lied about material facts under oath.* Behind a screen of smoke and mirrors, the prosecution has done nothing more than parse Mr. Tzannos's submissions, piece by piece, line by line, arguing that Mr. Tzannos did not "meet his burden of making a 'substantial preliminary showing.'" Pros. Br. at p. 1. Its

efforts, however, fall far short, and this Court can reach only one logical conclusion: Mr. Tzannos is entitled to an evidentiary hearing.

The prosecution's specific complaints about the sufficiency of Mr. Tzannos's submission are addressed below.

### 1. The Police Seized All Tapes and Records from August, 2003.

The prosecution complains that Mr. Tzannos's affidavit did "not say that the state police obtained tapes and records of all of his illegal gaming activities on August 16, 17, 20 and 25, 2003." Pros. Br. at p. 5 (emphasis in original).

As to the completeness of the records, Mr. Tzannos's supplemental affidavit explains When the police executed the search warrant, they thoroughly searched his entire house for two to three hours. Ultimately, they seized every single paper and record from the third floor of his home, including all papers and records from August, 2003. *See* Exh. A. (Notably, Russolillo described the third floor as "a gaming office, with three tables, each table was equipped with telephones, voice activated cassette recorders, gaming slips, pens, calculator, line sheets and other gaming materials." Exh. C). And, as the report makes clear, officers seized many, many items including "numerous papers with gaming notations, cuff sheets, line sheets, past dated cassette tapes, recorders and other gaming materials." Exh. C.

Furthermore, Mr. Tzannos has signed a supplemental affidavit explaining that, not only did the police seize each and every tape from August, 2003, but they seized all of the tape recorders as well. *See* Exh. A.

## 2. Counsel's Description of the Contents of the Relevant Audiotapes is Accurate.

Notably, the prosecution does not allege that the defense improperly interpreted any of the ledger sheets, play or lines. Instead, it simply complains that neither Mr. Tzannos nor Ms. DeJuneas "explain how particular seized tapes …can be shown to relate to particular dates and specific telephone lines." Pros. Br. at p. 5.

As explained in counsel's supplemental affidavit, counsel – aided by Mr. Tzannos – was able to determine which tapes recorded calls on dates by simply listening to the conversations, and comparing the discussions to the lines for each day. *See* Exh. B. The prosecution certainly is capable of doing so as well. And as for matching the tapes to different telephone numbers, counsel simply referred to the affidavits, which indicated the telephone numbers each affiant used. *See id.*

## 3. Defense Counsel Personally Drafted Each Affidavit.

Seizing upon a single pronoun amongst many, many pages of briefing, documents, and affidavits, the prosecution would have this Court believe that the defendant -- not counsel -- drafted each of the bettors' affidavits himself, then handed them over to defense counsel (who then filed them in this Court, all the while attempting to obscure who actually wrote the affidavits). *See* Pros. Br. at p. 6.

Not only is that allegation insulting to the integrity of counsel, but it is preposterous. The prosecution's strained reading of the brief and affidavits simply does not make sense. But for the sake of efficiency, counsel will not go through the pains of explaining the fallacy of the prosecution's arguments, and simply offers a supplemental affidavit, explaining that prior to filing the Motion:

3

- counsel personally interviewed most[1] of the affiants;
- the affiants told counsel they were not the informants;
- counsel knew the true name of each affiant; and
- Ms. DeJuneas personally drafted each and every affidavit.

See Exh. B.

And, in her Supplemental Affidavit, Ms. DeJuneas states, under oath, that she has since personally interviewed the remaining affiants, each of who confirm that they signed the affidavits and that the affidavits are true and accurate.

### 4. The Affidavits Were Filed In Redacted Form For Good Cause.

Next, the prosecution complains that the affidavits of bettors and callers "do not contain any signatures." But, this Court can tell, the affidavits were signed; the signatures were simply redacted.

As for why the affidavits were redacted, the affiants' full names were redacted to protect them from being charged with any crime as a result of their cooperation. If this Court so requires, Mr. Tzannos will submit unredacted copies of the affidavits under seal.

---

[1] The only affiants that counsel did not personally interview did not come anywhere close to meeting Russolillo's description of CI-1. For example, counsel did not personally interview Chris; Chris, however, called on only one of the four relevant dates. Counsel did not personally interview Keith, but Keith called on only two of the four relevant dates. Finally, although counsel did speak to Bev on one occasion, counsel did not interview her at length. Bev never called the telephone number referenced in Russolillo's affidavit. Bev was understandably nervous about getting involved, and counsel spoke to her significant other at length about Bev's affidavit. He in turn spoke to Bev, who mailed the signed affidavit to counsel. See Exh. B.

4

**CONCLUSION**

In short, the defense has identified each and every person who could possibly be CI-1. And each and every one of these people has signed an affidavit, denying under oath, that s/he is Russolillo's informant. Certainly such proof is sufficient to make a substantial preliminary showing that Russolillo made intentional misrepresentations about the sole informant he relied upon to secure the warrant.

For these reasons, as well as those set forth in Mr. Tzannos's principal brief, Mr. Tzannos respectfully requests that this Court grant his Motion.

> Respectfully Submitted,
> The Defendant,
> GREGORY TZANNOS
> By his attorneys,
>
> _/s/ Patricia DeJuneas_
> Patricia A. DeJuneas (BBO No. 652997)
> Richard M. Egbert (BBO No. 151800)
> The Law Offices of Richard Egbert
> 99 Summer Street, Suite 1800
> Boston, MA 02110
> Tel: (617) 737.8222

**CERTIFICATE OF SERVICE**

I, Patricia A. DeJuneas, hereby certify that I caused this document to be served by hand delivery upon on Assistant United States Attorneys Frederick Wyshak and Michael Tabek, this 15th day of March 2005.

_/s/ Patricia DeJuneas_
Patricia A. DeJuneas