UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | Criminal No. 04-10193-JLT |
| -v.- ) | |
| ) | |
| **GREGORY F. TZANNOS,** ) | |
| a/k/a **GREGORY F. TZANNAS,** ) | |
| ) | |
| **Defendant.** ) | |

### GOVERNMENT'S MEMORANDUM IN RESPONSE TO DEFENDANT'S REPLY BRIEF ON DEFENDANT'S MOTION FOR A *FRANKS* HEARING

The government respectfully files this memorandum in response to defendant Tzannos's Reply Brief regarding his motion for a *Franks* hearing. Nothing in Tzannos's reply brief alters the fact that he has failed to satisfy his burden of making a substantial preliminary showing that Trooper Russolillo knowingly and intentionally made false statements that were material to probable cause in the search warrant affidavit. Because Tzannos has failed to establish the prerequisite for a *Franks* hearing, he is not entitled to a hearing, and his motion should be denied.

Tzannos seeks to conflate (a) the legitimate interest of the government in protecting the identity of a confidential informant -- in order to prevent a criminal defendant or his criminal associates from maiming or murdering the confidential informant or the informant's relatives in retaliation for the confidential informant's having provided truthful information to law enforcement -- and (b) Tzannos's desire to avoid revealing the identities of the people who supposedly furnished anonymous "affidavits" in support of his motion. This Court should not countenance Tzannos's unwarranted attempt to evade the adversary process.

First, none of Tzannos's alleged "affiants" has stated, in the purported "affidavits," that the *affiant himself or herself* felt the need for anonymity.

Second, although Tzannos's Reply Brief asserts (on page 4) that the alleged affiants' "names were redacted to protect them from being charged with any crime as a result of their cooperation," they would not, of course, be charged with any criminal conduct *because of* their cooperation. They would only be charged with crimes if they committed crimes that merited prosecution -- and it is not obvious that they did. Nothing in the purported "affidavits" indicates that any of the alleged "affiants" violated or should be prosecuted under the Federal gambling statute, 18 U.S.C. § 1955. The remote possibility that state or local authorities might bring low-level misdemeanor prosecutions against mere bettors does not justify withholding their names from this Court.

Third, if the true reason for the defense submitting anonymous "affidavits" is that one or more of the "affiants" seek(s) to avoid Federal perjury prosecution for submitting materially false information in those very "affidavits" -- such as by falsely denying having furnished information to the State Police -- this Court's acceptance of such anonymous "affidavits" would be facilitating a fraud on this Court.

Fourth, without confirming or denying that any of Tzannos's "affiants" is CI-1, the person who is CI-1 would have had every reason to deny to Tzannos that the person had been a confidential informant whose cooperation was responsible for Tzannos's current felony prosecution, as discussed in the government's prior submission on this issue.

Fifth, Ms. DeJuneas's suggestion (Reply Br. at 4) that perhaps Tzannos could "submit unredacted copies of the affidavits under seal" is unacceptable. There is no principled reason why the government should be excluded from this part of the adversary process, and the Court

institutionally would not have access to information that the government may well possess that could demonstrate the falsity of one or more of the "affidavits."

Sixth, even if the State Police succeeded in seizing every tape and gambling record that was inside Tzannos's house as of August 28, 2003, that would not guarantee (nor does Tzannos clearly assert) that those records reflected every transaction and phone call that occurred on August 16, 17, 20, and 25, 2003.[1]

Seventh, if CI-1 happened to be mistaken about the date or phone line of a particular transaction with Tzannos, that would be an error on CI-1's part and *not* any indication of perjury by Trooper Russolillo. The fact that a witness may have provided incorrect information to an affiant is irrelevant to determining if a *Franks* hearing is required because a "*Franks* violation occurs only if the affiant knew the third party was lying, or if the affiant proceeded in reckless disregard of the truth." *United States v. Jones*, 208 F.3d 603, 607 (7th Cir. 2000). Indeed, it is not sufficient for a defendant to demonstrate that "an informer lied to an unsuspecting affiant, even when the lie was deliberate." *United States v. Southard*, 700 F.2d 1, 10 (1st Cir. 1983); *cf. Franks*, 438 U.S. at 171 (deliberate falsity or reckless disregard at issue in *Franks* hearing is only that of the affiant, not of any non-governmental informant).

Since -- as discussed in the government's prior submission -- CI-1 had a successful prior track record and the State Police developed corroboration of information that CI-1 furnished regarding Tzannos, Trooper Russolillo had a strong basis for relying upon CI-1's information about

---

[1] August 16 and August 17, 2003 were almost two weeks prior to the execution of the search warrant on August 28, 2003. It is entirely possible that before August 28 (when the search warrant was executed), Tzannos had routinely destroyed some of the records and/or reused some of the tapes from August 16 and 17.

Page 4

Tzannos.[2] By contrast, Tzannos has furnished no explanation or even conjecture of why Trooper Russolillo would have lied in an affidavit in *any* case, no less in this particular -- relatively minor -- case.

In the search warrant affidavit, Trooper Russolillo stated that CI-1 agreed to provide information to Troopers Russolillo and Orlando only if CI-1's identity would not be revealed, and that disclosing CI-1's identity would expose CI-1 to retribution, including physical harm. (Russolillo Aff. ¶ D). The importance of protecting the confidentiality of informants such as CI-1 has long been recognized as important to law enforcement and to the public interest. *See, e.g., Roviaro v. United States*, 353 U.S. 53, 59 (1957).

It bears re-emphasizing that Tzannos *is not entitled* to a *Franks* hearing simply because he wants one. "[E]videntiary hearings on motions in criminal cases are the exception, not the rule. ... *See Franks v. Delaware*, 438 U.S. 154, 155-56 ... (requiring 'substantial preliminary showing' antecedent to evidentiary hearing on motion in criminal case)...." *United States v. Alicea*, 205 F.3d 480, 487 (1st Cir.), *cert. denied*, 531 U.S. 909 (2000).

There is "a presumption of validity with respect to the affidavit supporting the search warrant," and "[t]o mandate an evidentiary hearing, ... [a]ffidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." *Franks*, 438 U.S. at 171.

Tzannos has failed to satisfy this burden. He has not submitted affidavits -- *i.e.*, statements submitted by named affiants under penalty of perjury, sworn to before a person authorized to

---

[2] Indeed, the results of the search *confirmed* the accuracy of information furnished by CI-1, as discussed in the government's prior submission.

Page 5

administer oaths. And, Tzannos's purported "affidavits" contain no indicia of reliability. They give no background information about the purported "affiants," no reason to believe their accounts, and the "affidavits" themselves are only a few sentences long. Tzannos has not satisfactorily explained his failure to publicly name the affiants, and his suggestion of giving the names *ex parte* to the Court would deprive the Court of the input of the government in determining the truthfulness of the "affidavits." Moreover, if one of those "affiants" was in fact CI-1, that person would have had every reason to conceal that fact from Tzannos and therefore to have filed a false affidavit.

Since Tzannos has not established the prerequisite for a *Franks* hearing, his motion should be denied.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: *Michael L. Tabak*
MICHAEL L. TABAK
Assistant U.S. Attorney
Telephone: (617) 748-3100
Date: March 16, 2005

## CERTIFICATE OF SERVICE

This is to certify that I have this day served upon the persons listed below a copy of the foregoing document by depositing in the United States mail a copy of same in an envelope bearing sufficient postage for delivery:

Patricia A. DeJuneas, Esq.
Richard M. Egbert, Esq.
99 Summer Street - Suite 1800
Boston, MA 02210

This 16th day of March, 2005.

                                                      Michael L. Tabak
                                                      Assistant United States Attorney