UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    v.<br><br>GREGORY F. TZANNOS,<br>  a/k/a GREGORY F. TZANNAS | Criminal No. 04-10193-JLT |

### DEFENDANT'S PRE-*FRANKS* HEARING MEMORANDUM

This Court recently granted Defendant Gregory Tzannos's Motion for a *Franks* Hearing, finding that Mr. Tzannos had made a substantial preliminary showing that Massachusetts State Trooper Pasquale Russolillo intentionally (or recklessly) made false and material allegations about a purported informant.

This memorandum is submitted, at the Court's request, to clarify the facts Mr. Tzannos intends to establish at the hearing, scheduled for September 28, 2005.

**I.    BACKGROUND**

This case started as a garden-variety state district court case. On August 28, 2003, Russolillo submitted an application for a search warrant to a magistrate of the East Boston District Court. In support, Russolillo offered a fourteen page affidavit, alleging under oath that he had probable cause to believe that Mr. Tzannos was committing violations of M.G.L. c. 271, §§ 17 and 17A (proscribing the possession of "apparatus, books or any device for registering bets" and the use of a telephone to accept bets).

During the execution of that warrant, police seized a number of items, including documents related to gaming and firearms.

The day after the search, Russolillo obtained a criminal complaint in the East Boston District Court. The complaint charged possession of a firearm and ammunition without an FID card, receiving stolen property, possession of a sawed-off shotgun, carrying a dangerous weapon, and violations of the above gaming statutes.

The case proceeded in the East Boston District Court until June 30, 2004, when a federal grand jury issued an indictment, charging Mr. Tzannos with being a felon in possession of a firearm. That indictment stems from the state court search warrant.

## II.  THIS COURT SHOULD HOLD A FULL EVIDENTIARY HEARING

In its pre-hearing submission, the prosecution asserts that this Court wrongly decided Mr. Tzannos's Motion for a *Franks* Hearing. It does not, however, offer any new facts, arguments or law. Simply put, there is no reason for this Court to reverse itself, nor has the prosecution proffered one.

The prosecution seeks to avoid a hearing another way: it asks this Court to allow Russolillo to testify *ex parte* and *in camera*. But again, the prosecution offers no good reason for its request. Indeed, this Court has already scheduled the evidentiary hearing, and Mr. Tzannos has committed time and resources toward preparing for that hearing.

Further, the cases cited by the prosecution (p. 5 of its memorandum) are entirely inapposite. *See, e.g., United States v. Southard*, 700 F.2d 1, 8 (1st Cir. 1983)( (Court conducted *in camera* interview as part of the determination whether to even grant a *Franks* hearing, noting that defendants usually lack the information necessary to make the substantial preliminary showing that *Franks* requires); *United States v. Cummins*, 912

F.2d 98, 101 (1st Cir. 1990)(Court found that defendant had failed to make the substantial preliminary showing).[1]

Moreover, Russolillo's credibility (or lack of credibility) is the central issue raised by Mr. Tzannos. The interests of justice will certainly not be served, nor will the letter and spirit of *Franks,* if Mr. Tzannos is denied the opportunity to cross examine the very affiant whose allegations are at issue.

### III.     EVIDENCE TO BE ADDUCED AT THE HEARING

Mr. Tzannos will show that he used three telephone numbers. The three telephone numbers were: (1) **617-567-6114**, **the telephone number that, according to Russolillo, CI-1 called**; (2) 617-561-0941; and (3) 617-846-4970. Each bettor knew and called only one of these telephone numbers. Thus, simply by looking at a bettor's name, Mr. Tzannos can identify which telephone number s/he called.

Also, as officers discovered during the search, each telephone was hooked up to a sound/voice activated recording device. Mr. Tzannos will show that he routinely used these recording devices and as a matter of practice, he recorded each and every incoming call. After a week's books were settled, he would erase the tapes and record over them. Thus, when the search warrant was executed and the police seized the cassettes, most were blank, or un-intelligible. Several cassettes contained intelligible recordings.

Officers also seized documents related to gaming. Included among the seized items were weekly ledger sheets. These ledger sheets show which bettors bet on any particular day, including the days made relevant by Russolillo's sworn allegations.[2]

---

[1] *See also United States v. Higgins*, 995 F.2d 1 (1st Cir. 1993)(unlike here, Higgins specifically requested an in camera interview; that request was denied).

3

**The Allegations Critical to Probable Cause**

In setting forth the factual allegations in support of probable cause, Russolillo relied almost exclusively upon information he attributed to a single confidential informant, identified as "CI-1." There are four allegations in Russolillo's affidavit that are critical to probable cause; each is directly related to CI-1: The first three are Russolillo's allegations that CI-1 had told him that on three specific dates, CI-1 had placed wagers with Mr. Tzannos over telephone number (617) 567-6114. The fourth allegation is that Russolillo and CI-1, acting together, placed a "controlled call" to Mr. Tzannos over (617) 567-6114.

**But, as Mr. Tzannos has already shown, not a single person fits Russolillo's description of CI-1.** That is, not a single person placed bets on the three relevant dates and then called for the "lines" on August 25, 2003. More specifically, Mr. Tzannos will prove:

First, that Russolillo deliberately lied when he swore under oath that CI-1 had placed a wager with Tzannos on August 16, 2003 over telephone number (617) 567-6114. As the evidence will show, documents seized during the search show that eight people -- and only eight people -- placed bets on August 16, 2003. Those eight people were: Chris, Bev, Fisher, Jerry, Keith, Norton, Ted and Tuna. Of these eight, only four called telephone number (617) 567-6114: Chris, Keith, Jerry and Norton. In the affidavits previously submitted to this Court, each of the four denied, under oath, being the CI. And each will testify before this Court to the same.

---

[2] The police also seized "lines" (the odds for each sporting event on a particular day) and "play" (each bettor's wagers on a particular day).

Second, Mr. Tzannos will prove that Russolillo lied under oath when he alleged that CI-1 had placed a wager with Mr. Tzannos on August 17, 2003 over telephone number (617) 567-6114. At the hearing, Mr. Tzannos will prove, via records seized during the search that five -- and only five -- people called and placed bets on August 17, 2003: Bev, Fisher, Keith, Norton, and Tuna. Mr. Tzannos will further prove – via affidavits already submitted as well as through testimony – that only Keith and Norton called the telephone number referenced in Russolillo's affidavit. And, as they did in their affidavits, Keith and Norton will again deny, under oath, being Russolillo's informant.

Third, Mr. Tzannos will prove that Russolillo lied when he alleged that CI-1 had placed a wager with Mr. Tzannos on August 20, 2003 over telephone number (617) 567-6114. At the hearing, Mr. Tzannos will prove that only three people called and placed bets on August 20, 2003: Bev, Fisher, and Tuna. **Not one of them even called the relevant telephone number.**

Fourth**,** Mr. Tzannos will prove that Russolillo deliberately lies alleged that CI-1 placed a controlled call[3] to Mr. Tzannos on August 25, 2003. One of the seized tapes is a recording of calls made to telephone number (617) 567-6114 on August 25, 2003. And

---

[3] Regarding the alleged controlled call, Russolillo stated:

On [August 25, 2003] during gaming hours, "CI-1" placed a controlled telephone call to telephone numbered (617) 567-6114. (It should be noted that a controlled gaming call is essentially an investigative method of verifying the accuracy of an informant's [sic] information. Generally these calls are conducted during the specified gaming periods, and closely monitored by a member of law enforcement. During this occurrence, the investigator personally dials the specified telephone number, and remains on the line until the call is answered by the registering agent, subsequent to which the telephone is given to the cooperating individual and the ensuing conversation is monitored by the officer present.) "CI-1" stated that the person on the other end of the telephone answered and proceeded to give a run down of all the scheduled baseball lines. "CI-1" also informed this affiant that the person that answered the telephone was Gregory Tzannos.

that tape shows that only three people made gaming related calls to (617) 567-6114 that day: Paulie, Jerry and Norton. Paulie gave lines; he did not receive them. Paulie, therefore, cannot be the informant. And as for Jerry and Norton, they will also deny, under oath, being the informant.

### III.   CONCLUSION

At the conclusion of the *Franks* hearing, this Court will, no doubt, conclude tat there is only one remedy for Trooper Russolillo's intentional misrepresentations of material facts: suppression.

Respectfully submitted,

GREGORY TZANNOS,
Defendant,
By his attorneys,

    /s/ Richard M. Egbert
Patricia A. DeJuneas (BBO No. 652997)
Richard M. Egbert (BBO No. 151800)
The Law Offices of Richard Egbert
99 Summer Street, Suite 1800
Boston, MA 02110
Tel: (617) 737-8222

### CERTIFICATE OF SERVICE

I, Patricia A. DeJuneas, hereby certify that I caused this document to be served by hand delivery upon on Assistant United States Attorneys Frederick Wyshak and Michael Tabak, this 23rd day of September, 2005.

    /s/ Richard M. Egbert
Richard M. Egbert